UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT DAYON DUMAS,

    Petitioner,

v.                                          Case No. 8:24-cv-2393-TPB-TGW
                                              Case No. 8:18-cr-326-TPB-TGW

UNITED STATES OF AMERICA,

    Respondent.
_____

**ORDER**

Robert Dayon Dumas files a counseled motion under 28 U.S.C. § 2255 to vacate his convictions and 300-month sentence for five Hobbs Act robberies and discharging a firearm during two of those robberies. (Civ. Doc. 1) He claims his former counsel was ineffective for not challenging the validity of the traffic stop that resulted in his arrest and prosecution. Dumas is entitled to no relief because his claim is untimely and meritless.

**I.   Background**

Dumas committed five armed robberies in the Tampa suburb of Wesley Chapel in February of 2018. (Crim. Doc. 97-1 and 94) Corporal Andrew Denbo investigated the robberies for the Pasco County Sheriff's Office. (Crim. Doc. 72 at 8–9)

1

The following month, Corporal Denbo observed Dumas driving a vehicle at a rate above the speed limit and pulled him over. (*Id.* at 27–29) During his initial contact with Dumas, Corporal Denbo did not have his department-issued body camera activated. (*Id.* at 54–55) Corporal Denbo smelled "marijuana coming from within the vehicle" and observed what he believed to be marijuana on the passenger seat. (*Id.* at 35–37) Dumas told Corporal Denbo that a bag located on the passenger seat contained a gun. (*Id.* at 37)

Corporal Denbo retrieved the battery for his body camera and activated it. (*Id.* at 54–55) He searched Dumas' vehicle and found marijuana, a portable scale, and evidence that linked Dumas to the armed robberies, including shoes, a mask, and gloves. (*Id.* at 48–49) Corporal Denbo arrested Dumas for possession of marijuana and transported him to the Sheriff's Office. (*Id.* at 52–56) Dumas eventually provided a full, videotaped confession of his involvement in the armed robberies. (Crim. Doc. 97-2)

A grand jury charged Dumas with five counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Counts One through Five), and two counts of discharging a firearm during two of the robberies, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (Crim. Doc. 1) Before trial, Dumas moved to suppress all evidence recovered from the warrantless search of his vehicle and argued that law enforcement lacked probable cause to conduct the search. (Crim. Doc. 43) Dumas also moved to suppress incriminating statements he made after his

arrest and argued that he was not properly advised of his *Miranda* rights. (*Id.*) Dumas did not challenge the validity of the traffic stop in his motion to suppress.

Corporal Denbo was the only witness at the suppression hearing. During cross-examination, counsel questioned Corporal Denbo's credibility, including his initial failure to properly activate the department-issued body camera during the traffic stop. (Crim. Doc. 72 at 58–71, 85, 141–42)

Following the hearing, the district court denied the motion to suppress. (Crim. Doc. 80)  It found Corporal Denbo credible and ruled that he had probable cause to search Dumas' vehicle based on the odor of marijuana emanating from the vehicle. (*Id.* at 3–4)  The district court also ruled that Corporal Denbo's detection of the odor of marijuana, his observation of marijuana in the vehicle, and Dumas' admission of using marijuana established sufficient probable cause to support Dumas' arrest for possession of marijuana. (*Id.* at 5–6) Also, the district court ruled that there was no basis to suppress the items related to the robberies because they were found in plain view during the lawful search of the vehicle. (*Id.* at 4–5)  Finally, the district court ruled that incriminating statements made by Dumas were admissible because he knowingly and voluntarily waived his *Miranda* rights. (*Id.* at 6–7)

To facilitate his appeal of the district court's denial of his motion to suppress, Dumas proceeded to a bench trial and stipulated to certain facts

3

about the armed robberies. (Crim. Doc. 97-1) After a short trial, the district court found Dumas guilty of all charges and sentenced him to 300 months. (Crim. Docs. 94 and 109)

On direct appeal, Dumas argued that the district court erred in denying the motion to suppress. He argued that Corporal Denbo lacked credibility, that there was no probable cause to seize the items unrelated to marijuana possession, and that Corporal Denbo failed to secure a valid *Miranda* waiver. *See United States v. Dumas*, No. 21-11341, 2021 WL 3663560 (11th Cir. Aug. 16, 2021). The circuit court rejected Dumas' arguments and affirmed. *See United States v. Dumas*, No. 21-11341, 2023 WL 3302878 (11th Cir. May 8, 2023). Next, Dumas filed for a petition for writ of certiorari, which the U.S. Supreme Court denied. *See Dumas v. United States*, 144 S. Ct. 289 (2023).

## II. Analysis

Dumas now files a counseled motion to vacate his convictions and sentence and raises one ground for relief. He claims that his former counsel was ineffective for not challenging the validity of the traffic stop in the suppression motion. (Civ. Doc. 1) The United States responds that Dumas' claim is untimely and meritless. (Civ. Doc. 5) Dumas filed a counseled reply. (Civ. Doc. 6)

### A.   Dumas' claim is untimely.

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year statute of limitations for filing a § 2255 motion to vacate or correct sentence.  28 U.S.C. § 2255(f).  The one-year period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by government al action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Dumas' judgment of conviction became final on October 10, 2023, when his petition for certiorari review was denied. *See Washington v. United States*, 243 F. 3d 1299, 1300 (11th Cir. 2001) (explaining that if a prisoner timely petitions for certiorari review, the filing period "begins to run when the Supreme Court denies certiorari or issues a decision on the merits"). Therefore, he had until October 11, 2024, to file his § 2255 motion.

However, on Friday, October 11, 2024, the Tampa Division of the Middle District of Florida was closed due to Hurricane Milton, which struck the west coast of Florida on Wednesday, October 9, 2024. The Tampa Division closed on Tuesday, October 8th, 2024,[1] in anticipation of the arrival of the hurricane, and remained closed until it reopened normal operations on Tuesday, October 15, 2024. "[I]f the clerk's office is inaccessible . . . then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday[.]" Fed. R. Civ. P. 6(a)(3)(A). Because the court was closed on Friday, October 11, 2024, the time for filing was extended to the first accessible day that is not a Saturday, Sunday, or legal holiday, which was Tuesday, October 15, 2024. *See Circuitronix, LLC v. Kinwong Electronic (Hong Kong) Co., Ltd.*, 993 F.3d 1299, 1304 (11th Cir. 2021) (concluding that "the closure of the courthouse—and with it, the physical closure of the clerk's office—made the clerk's office inaccessible for purposes of Rule 6(a)(3)(A)" and "[t]he clerk's office is inaccessible when its building is officially closed or otherwise unavailable, even if the parties are still able to submit filings electronically"). Dumas, however, did not file his counseled § 2255 motion until Wednesday,

---

[1] The Tampa Division courthouse was closed to the public beginning at 3:00p.m. on Tuesday, October 8, 2024.

6

October 16, 2024, one day after the extended deadline.[2]  Thus, Dumas' § 2255 motion is untimely under § 2255(f)(1).

Recognizing that the motion is untimely, Dumas asserts that he is entitled to equitable tolling of the limitations period because, in late September and early October 2024, "counsel faced two significant and entirely unforeseeable events that disrupted the ordinary course of representation." (Civ. Doc. 6 at 2)  Dumas' former counsel explains that he was hired in August of 2024 and promptly began "reviewing the case materials, researching applicable law, and preparing the motion in anticipation of timely filing." (Civ. Doc. 1 at 15)  However, in September of 2024, counsel's daughter was diagnosed with melanoma, "a life-threatening medical condition requiring immediate surgical interventions."[3]  (Civ. Doc. 6 at 2)  Counsel was focused on providing critical support to his daughter both locally and out of state. Specifically, he "was required to travel to Memorial Sloan Kettering Cancer Center for [his daughter's] medical testing and treatment in New York, New York, on September 22-23, and October 2-5, 2024." (Civ. Doc. 6 at 4)  Counsel's obligations to his daughter "disrupted [his] availability during pivotal periods when the § 2255 motion was being drafted."  (*Id.* at 5)

---

[2] Former counsel initiated this action on Dumas' behalf by electronically filing the Section 2255 motion (Civ. Doc. 1) at 11:51p.m. on Wednesday, October 16, 2024, in the court's electronic filing system.

[3] Former counsel attaches redacted medical records that appear to document his daughter's melanoma diagnosis on September 23, 2024.  (Civ. Doc. 6-1 at 2)

Additionally, counsel explains that Hurricane Milton "caused a lack of immediate access to essential materials and directly affected counsel's ability to finalize and submit the motion." (*Id.* at 5) The hurricane caused "a severe roof leak [in counsel's office]" and required counsel and staff to work remotely. (*Id.* at 3) "Without immediate access to critical files and the usual office infrastructure," counsel's ability to draft the § 2255 motion was inhibited despite his diligent efforts. (*Id.*)

"[E]quitable tolling is an extraordinary remedy which is typically applied sparingly." *Dodd v. United States*, 365 F.3d 1273, 1282 (11th Cir. 2004) (quotations omitted). Equitable tolling can apply to a Section 2255 motion. *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). To toll the limitation period, the movant must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quotations omitted). "The diligence required for equitable tolling purposes is 'reasonable diligence', not 'maximum feasible diligence.'" *Id.* (citations omitted). "The focus of the inquiry regarding extraordinary circumstances is on the circumstances surrounding the late filing of the habeas petition . . . and whether the conduct of others prevented the petitioner from timely filing." *Arthur v. Allen*, 452 F.3d 1234, 1253 (11th Cir. 2006) (quotations omitted). The extraordinary circumstance must be "both beyond [the movant's] control and

8

unavoidable even with diligence." *Johnson v. United States*, 340 F.3d 1219, 1226 (11th Cir. 2003). "The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner." *Dodd*, 365 F.3d at 1282 (quotations omitted). "Mere conclusory allegations are insufficient to raise the issue of equitable tolling." *San Martin v. McNeil*, 633 F.3d 1257, 1268 (11th Cir. 2011).

These dual circumstances—counsel's unavailability while supporting his daughter during her medical crisis and counsel's lack of immediate access to critical files and the usual office infrastructure caused by Hurricane Milton—although unfortunate, are insufficient to justify equitable tolling of the limitations period. Counsel filed a notice of appearance in Dumas' criminal action on August 23, 2024, and his daughter received the melanoma diagnosis a month later, on September 23, 2024. (Crim. Doc. 135; Civ. Doc. 6-1 at 2) Between the diagnosis and the § 2255 filing deadline, counsel traveled to New York twice to support his daughter. He returned from New York on October 5, 2024, and Hurricane Milton made landfall in Florida on October 9, 2024.

Although these unfortunate circumstances are ill-timed, they do not warrant the extraordinary remedy of equitable tolling. Counsel neglects to explain how he diligently pursued Dumas' rights during the month between his appearance in this action and his daughter's diagnosis. Nor does counsel explain his diligence in the four-day period between his return from his second

9

trip to New York and the arrival of Hurricane Milton.  For example, counsel does not state that he was required to evacuate, that he lacked internet access, or that he suffered personal inconveniences in the immediate days before or after the hurricane that impeded his ability to timely file the motion.  Counsel fails to show that, even with reasonable diligence, he could not draft and file this straightforward, one-claim Section 2255 motion before the diagnosis or before the hurricane.  And, while sympathetic to counsel's circumstances, the district court is unable to locate (and the parties did not cite) any binding precedent in which equitable tolling was justified by the medical circumstances of a non-party.

Furthermore, counsel has not shown that damage to his law office caused by Hurricane Milton constitutes an extraordinary circumstance that prevented the timely filing of the § 2255 motion.  Although counsel and his staff were forced to work remotely because of a roof leak, counsel was not inhibited altogether from work.  Indeed, counsel submits that "progress on the motion was *slowed*." (Civ. Doc. 6 at 3) (emphasis added).  The circuit court has found that electrical outages and court closures caused by hurricanes do not warrant equitable tolling.  *See e.g. Bello v. United States*, 757 F. App'x 819, 824 (11th Cir. 2018) (affirming that equitable tolling was not justified by the dual circumstances of the death of the mother of counsel's legal assistant and the arrival of Hurricane Irma); *Bass v. Att'y General,* No. 20-10985, 2022 WL

10

1658637, at *2 (11th Cir. May 25, 2022) (affirming that equitable tolling was not justified because the petitioner failed to establish a causal connection between Hurricane Michael and the late filing of his § 2254 petition).

The dual circumstances of counsel's daughter's medical crisis and the arrival of Hurricane Milton are unfortunate and ill-timed. However, counsel has not shown that he exercised reasonable diligence in the time before those circumstances arose. Neither the medical emergency of a non-party nor the frustrated access to normal law office operations constitutes extraordinary circumstances that prevented timely filing. Accordingly, Dumas' motion under § 2255 must be dismissed as untimely.

### B. Dumas' claim lacks merit.

In any event, even if Dumas timely filed his counseled § 2255 motion, he is not entitled to relief because his claims completely lack merit. Dumas claims that former counsel was ineffective for not challenging the validity of the traffic stop in the motion to suppress. He suggests that former counsel should have obtained radar logs and calibration records, which would have shown that Dumas was not speeding. (Civ. Doc. 6 at 10) Corporal Denbo lacked credibility, Dumas argues, because of his failure to activate his body camera, and therefore, it was unreasonable for former counsel not to challenge Corporal Denbo's testimony that Dumas was speeding.

11

In his responsive affidavit, former counsel explains that he investigated, researched, and discussed with Dumas the potential arguments for the motion to suppress. (Civ. Doc. 5-1 at 3–4) He made a strategic decision not to challenge the validity of the stop in the suppression motion *because Dumas admitted to Corporal Denbo that he was speeding.* Attached to former counsel's affidavit is a copy of Corporal Denbo's body camera video recording during which Dumas states to Corporal Denbo that it "was stupid of [him] to be going 70 miles per hour." (Civ. Doc. 5-1 at Ex. B at T20:08:01 to T20:08:10) Former counsel explains that he reviewed the video with Dumas and advised Dumas that challenging the basis of the stop in the suppression motion was not a viable issue because of Dumas' admission.

To prevail on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's representation fell below an objective standard of reasonable professional assistance; and (2) the petitioner was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 693–94 (1984). To establish deficient performance, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*). A petitioner demonstrates prejudice only when he establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Counsel's duty to conduct a pretrial investigation is governed by a reasonableness standard. *Mitchell v. Kemp*, 762 F.2d 886, 888–89 (11th Cir. 1985). Counsel must perform a "reasonable" investigation or make a "reasonable" decision that such an investigation is not warranted. *Id*. at 888. Counsel's decisions regarding the level of investigation warranted must be viewed with a strong presumption of reasonableness at the time the decision regarding investigation was made, not with the benefit of hindsight. *Strickland*, 466 U.S. at 689. No absolute duty exists to investigate particular facts or a certain line of defense. *Chandler*, 218 F.3d at 1317. "The decision whether to present a line of defense, . . . 'is a matter of strategy and is not ineffective unless the petitioner can prove that the chosen course, in itself, was unreasonable.'" *See Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002).

According to Corporal Denbo's incident report, which former counsel referenced during the suppression hearing, Corporal Denbo first observed a black Audi sedan approaching "at well over the speed limit." (Crim. Doc. 75-6 at 5) Corporal Denbo "began pacing [the] vehicle at 75 MPH as [the vehicle] went from a 55MPH zone to a 45MPH zone." (*Id*.) Corporal Denbo's "certified speedometer and moving radar system indicated the vehicle was traveling 75MPH[,]" and he initiated the traffic stop. (*Id*.) Corporal Denbo reported that when he asked Dumas how fast he was traveling, Dumas stated, "he believed he was going 75MPH." (*Id*.) Approximately 30 minutes after the initial

13

questioning, Corporal Denbo again asked Dumas how fast he was going, and Dumas responded that he was "driving fast" and thought he was driving 70 miles per hour. (*Id.* at 10)

Dumas cannot show that former counsel's strategic decisions not to obtain radar logs and calibration records and not to challenge the validity of the stop in the suppression motion were unreasonable or prejudicial. Dumas merely speculates that radar logs and calibration records would have shown that he was not speeding. He offers no explanation for his admission that he was speeding, which was captured on body camera, or for Corporal Denbo's incident report, which further substantiates the fact that Dumas was speeding. "[S]peculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation." *See Brownlee*, 306 F.3d at 1060. And, "[c]ounsel cannot be labeled ineffective for failing to raise issues which have no merit." *Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990).

Instead of challenging the basis of the stop in the suppression motion, former counsel attempted to cast doubt on Corporal Denbo's credibility in the suppression hearing by emphasizing that Corporal Denbo initially failed to activate his body-worn camera to capture the vehicle's speed. (Crim. Doc. 72 at 67–68) To diminish Corporal Denbo's credibility, former counsel asked, "So none of the radar, none of the speedometer, none of this car allegedly flying by

14

you, none of that was captured on this body-worn camera, although it could have?" (*Id.* at 68) Corporal Denbo responded that it was possible the camera could have captured that information but he forgot to activate the camera. (*Id.*)

Ultimately, in denying the motion to suppress, the district court found Corporal Denbo's testimony to be credible. (Crim. Doc. 80 at 3) The district court described Corporal Denbo as "professional, calm, and courteous" during his lengthy testimony and observed that "[h]is testimony was largely internally consistent[.]" (*Id.* at 4) The district court emphasized that Dumas "did not present any testimony or evidence to contradict Corporal Denbo's testimony." (*Id.*) However, the mere fact that former counsel was unsuccessful in casting doubt on Corporal Denbo's credibility does not show that counsel's performance was ineffective. *See Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010) ("The fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel"). Strategic decisions, including former counsel's decision not to challenge the validity of the traffic stop in light of Dumas' recorded admission that he was speeding, "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 691. Dumas fails to show that former counsel's strategic, but unsuccessful, attempt to cast doubt on Corporal Denbo's credibility was unreasonable or prejudicial.

### III. Conclusion

In light of the undisputed fact that Dumas was speeding - as evidenced by his own admission captured on Corporal Denbo's body camera - any claim that former counsel erred in not challenging the traffic stop is wholly and completely frivolous.  Frankly, this entire motion comes close to meriting the imposition of sanctions.  When arguing that former counsel erred by not challenging the validity traffic stop, counsel never mentioned, not even in a footnote, that his client admitted on video he was speeding.  Obviously, a traffic stop for exceeding a posted speed limit is perfectly permissible and cannot serve as the basis for a motion to suppress.  Under these undisputed facts, attempting the base an ineffective assistance of counsel claim on an argument such as this is frivolous.

Dumas' counseled motion under § 2255 to vacate, set aside, or correct his sentence (Civ. Doc. 1) is **DENIED**. The clerk is directed to enter a judgment against Dumas, terminate any pending motions, close this case, and enter a copy of this order in the criminal case.

### CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL IN FORMA PAUPERIS

Dumas is not entitled to a certificate of appealability ("COA").  A prisoner moving under § 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court

must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Dumas must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Dumas is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

A certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Dumas must obtain permission from the circuit court to appeal in forma pauperis.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 2nd day of April, 2025.

**TOM BARBER**
**U.S. DISTRICT JUDGE**